IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHNSON DUSTIN WOMBLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIV. ACT. NO. 2:13cv607-TFM |
| ) | (WO) |
| LEON FORNISS, individually and ) | |
| as Warden of Staton Correctional Facility, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

**I. INTRODUCTION**

On August 12, 2013, Plaintiff Justin Dustin Womble ("Womble") filed this 42 U.S.C. § 1983 action challenging the adequacy of medical treatment provided to him for chronic hematuria during his incarceration at Staton Correctional Facility ("Staton"). Womble names Warden Leon Forniss ("Defendant Forniss") and Corizon, Inc., formerly doing business as Correctional Medical Services ("Corizon"), as defendants. On March 13, 2014, Defendant Forniss filed a Motion for Summary Judgment. Doc. 19. On August 14, 2014, Womble filed a Response. Doc. 33. On August 25, 2014, this court granted the Motion for Summary Judgment with respect to Womble's claim that Defendant Forniss acted negligently and with deliberate indifference to his health by failing to supervise or train medical staff. Doc. 36. The court, however, declined to grant summary judgment in favor of Defendant Forniss with respect to Womble's claim that

Defendant Forniss acted with deliberate indifference to his health by failing to intervene and/or grant a transfer to a medical specialist outside the facility because the evidentiary materials were deficient at the time.  Doc. 36.  On December 5, 2014, Defendant Forniss filed a Supplemental Motion for Summary Judgment with supporting evidentiary materials.  Doc. 47.   On December 8, 2014, the court ordered that Womble may file a Response on or before January 5, 2015.  Doc. 48.   Womble, however, did not file an additional Response.

Now pending is the Supplemental Motion for Summary Judgment filed by Defendant Leon Forniss.  Doc. 47.  Upon consideration of the Supplemental Motion, the initial Response, and the evidentiary materials, the court concludes that the Motion for Summary Judgment is due to be granted in favor of Defendant Forniss.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][1] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (per curiam) (citation omitted); Fed.R.Civ.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on

---

[1] Effective December 1, 2010, the language of Rule 56(a) was amended.  The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the defendant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine [dispute] for trial."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact).

### III. DISCUSSION

Womble asserts that Defendant Forniss acted negligently and with deliberate indifference to his health when he failed to intervene regarding the medical treatment provided by Corizon medical personnel for his chronic hematuria. Specifically, he contends that Defendant Forniss should have ensured that he received additional medical treatment, such as a cystoscopy, and that his failure to transfer him to a medical specialist outside Staton Correctional Facility delayed his diagnosis of Grade II papillary transitional cell carninoma.

"Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), *citing Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only

liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949.  Thus, liability for medical treatment provided to Womble could attach to Defendant Forniss only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Womble asserts that Defendant Forniss was personally aware of his medical problem and that his medical requests and/or grievances were ignored by both medical and prison officials.  In addition, he argues that Defendant Forniss refused to grant a transfer to an outside specialist despite the medical staff's recommendation.

Defendants Forniss' deposition testimony indicates that it is the Warden's responsibility to ensure that the appropriate procedures are available and implemented by prison staff.  Specifically, Defendant Forniss testified that his responsibility "to ensure that [prisoners] get medical treatment is to ensure that they follow proper protocol to get medical treatment.  We make sure it's available for them."  Def's Dep., p. 8.  He explained that the proper protocol is for an inmate to complete a sick call request slip and, "[i]f they felt that didn't get [the appropriate protocol], then they have other protocols they can follow as well," such as the grievance procedure.  *Id*., pp. 10-11.  In addition, he acknowledged that a prison medical provider notifies the Warden before sending a prisoner "somewhere else."  *Id*., p. 26.

The undisputed evidentiary materials indicate that Womble was advised of the grievance procedures in place at Staton.  In November 2010, Womble signed an "Access

to Healthcare for Staton Correctional Facility" form which sets forth the following grievance procedure:

> All complaints for mental health, dental, and medical care are to be submitted on an informal grievance form. These forms can be obtained at both the pill call window and the office. After filling out the informal grievance form, place the form in the locked sick call request box. Allow a maximum of 7 days for your complaint to be answered and returned to you. After filing an informal grievance form, if you are not satisfied with the answer, you can request a formal grievance form. In order to receive the formal grievance form, you will have to send a written request to the Health Service Administrator (HAS), Mrs. Sagers-Copeland. [A]llow a maximum of 7 days for your complaint to be reviewed and an interview to be set up.
>
> Any dental, medical, or mental health educational information can be obtained through written request to the HSA.

Doc. 47-1, Def. Forniss' Ex. A, Attach to Dr. Hood's Affid., p. 19.

On October 28, 2010, Womble was transferred from Kilby Correctional Facility to Staton Correctional Facility. *Id.*, p. 50. On March 23, 2011, Womble submitted a health services request form complaining of pain while urinating, lower abdomen pain, and urinating blood sometimes. *Id.*, p. 46. On March 25, 2011, Womble reported to sick call complaining of difficulty urinating, burning upon urination, and lower abdomen pain. *Id.*, p. 44. The nurse's notes indicate Womble reported that he "has had this problem for years [and] has had MRI, CT scan, IVP, [and] lab work in the free world before being locked up." *Id.*, p. 45. The nurse referred Womble to a CMS provider and collected a urine sample for testing. *Id.* An ADOC urinalysis was negative for blood. *Id.*, p. 67. On March 28, 2011, medical personnel sent out a urinalysis and urine culture to the lab. *Id.*, p. 25. The laboratory reported "moderate" blood in the urine and "no growth." *Id.*, p. 62.

7

On April 1, 2011, Womble returned for a follow-up appointment, complaining of pain and blood in urine over the past month. *Id*., p. 31.  Medical personnel noted an in-house urinalysis was normal and diagnosed hematuria. *Id*.  In addition, Womble signed a "release of information authorization" to Cooper Green Hospital, in which medical personnel ordered a "urology workup re[garding] hematuria [and a] MRI/CT of ABD/pelvis [and] ultrasounds." *Id*., p. 78. Medical personnel ordered a follow-up appointment to be conducted within two to three weeks. *Id*., p. 25.   On April 4, 2011, a radiologist conducted an exam of Womble's abdomen and found the results to be "unremarkable." *Id.*, p. 73.

On April 29, 2011, Womble reported to an ADOC mental health services psychiatrist that "he is still having health problems [and] was supposed to be seen by free world doctor." *Id*., p. 104.

In May 2011, Womble signed a form acknowledging that he refused treatment for "blood in urine" and that he "left before seeing provider" on April 26, 2011. *Id*., p. 17. On July 12, 2011, Womble submitted a health services request form, complaining of "urinating blood, can't use the restroom [and] [i]n a lot of pain in my lower abdomen or stomach." *Id*., p. 42.  On July 14, 2011, Womble went to sick call complaining of difficulty urinating for the past four years, blood in urine, and a pain level of 8. *Id*., p. 36. The nurse provided ibuprofen and referred Womble to the Correctional Medical Services provider. *Id*. Medical personnel sent out urinalysis samples and ordered a follow-up appointment regarding hematuria lab results.  *Id*., p. 24.

The results of the urine tests were negative and indicated no growth.  *Id*. p. 59-61.

8

On August 12, 2011, Womble returned to sick call for a follow-up appointment regarding urinalysis results. *Id.*, p. 30. Womble complained of "blood at end of urinary stream." *Id.* Medical personnel found "no distended bladder" and diagnosed "hematuria unknown etiology." *Id.*

During a follow-up appointment on September 14, 2011, Dr. Hood "observed in-house voided specimen which was negative for blood with clean urine." *Id.*, p. 29, 58. Dr. Hood diagnosed "hematuria stable [with] negative results today". *Id.* He also "instructed [Womble] to follow up with urologist once released; however, if symptoms worsen recheck HCU" and noted that Womble "voiced understanding." *Id.*

On October 3, 2011, medical personnel noted that Womble submitted a grievance complaining of pain and blood in urine and that the nurse "will order Tylenol until [patient is] able to submit sick call." *Id.*, p. 28. On November 9, 2011, medical personnel noted that Womble left before seeing provider for an annual testicular exam. *Id.*

On November 15, 2011, Womble went to sick call complaining of a stomach virus. *Id.*, p. 38-39. The nurse provided loperimide and Pepto-Bismol. *Id.*, p. 39. The results of a urinalysis on December 22, 2011 were negative. *Id.*, p. 72.

Thus, the undisputed evidentiary materials indicate that grievance procedures were available and that Womble received medical treatment from CMS medical personnel at Staton when he attended his appointments as scheduled. Nothing in the record indicates that Warden Forniss had any involvement in the treatment of Womble. Dr. Hood indicates that he never discussed Womble's condition with Defendant Forniss and that the Warden had no involvement in any decision regarding Mr. Womble's medical

9

treatment. In addition, there is no evidence indicating that Dr. Hood requested that Warden Forniss approve a request to transfer Womble to a medical specialist. This court therefore concludes that Womble fails to present a genuine dispute of material fact with respect to his claim that Defendant Forniss acted with deliberate indifference to his health by failing to intervene in treatment decisions or grant a transfer request. The Supplemental Motion for Summary Judgment on this claim is due to be granted in favor of Defendant Forniss.

## IV. CONCLUSION

Accordingly, it is ORDERED as follows:

(1) The Supplemental Motion for Summary Judgment with respect to Womble's claim that Defendant Forniss acted with deliberate indifference to his health by failing to intervene and/or grant a transfer to a medical specialist outside the facility be GRANTED in favor of Defendant Forniss.  Doc. 47.

(2) Leon Forniss be DISMISSED as a defendant in this case.

Done this 17th day of February, 2015.

                                                  /s/Terry F. Moorer
                                                 TERRY F. MOORER
                                                 UNITED STATES MAGISTRATE JUDGE