IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHNSON DUSTIN WOMBLE, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV. ACT. NO. 2:13cv607-TFM (WO) |
| CORIZON, INC. formerly doing business as Correctional Medical Services, Inc., | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

**I. INTRODUCTION**

On August 12, 2013, Plaintiff Justin Dustin Womble ("Womble") filed this 42 U.S.C. § 1983 action challenging the adequacy of medical treatment provided to him during his incarceration at Staton Correctional Facility ("Staton"). Womble names Corizon, Inc., formerly doing business as Correctional Medical Services ("Corizon"), as a defendant. Specifically, Womble claims that Corizon acted negligently and with deliberate indifference to his health by delaying and/or refusing to provide medical treatment. He contends that the failure to provide appropriate treatment, including the failure to order a cystoscopy test to determine the cause of his chronic hematuria, resulted in a subsequent diagnosis of papillary transitional cell carcinoma upon his release from Staton. On December 5, 2014, Corizon filed a Motion for Summary Judgment. Doc. 46. On March 6, 2015, Womble filed a response. Doc. 55.

Pursuant to 28 U.S.C. §636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. Now pending is the Motion for Summary Judgment filed by Corizon. Upon consideration of the Motion, the Response, and the evidentiary materials, the court concludes that the Motion for Summary Judgment with respect to the federal claims against Corizon is due to be GRANTED in favor of Corizon and the state law claims are due to be REMANDED to the state court.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][1] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); Fed.R.Civ.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence

[1] Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the defendant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine [dispute] for trial."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 126.

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not

defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact).

## III. FACTS

At some point prior to his most recent incarceration, Womble began suffering from blood his urine and pain during urination. Def's Ex. A, Womble's Dep., p. 31. On March 18, 2010, a radiologist at Cooper Green Mercy Hospital completed a diagnostic imaging report indicating that "[t]he urinary bladder is unremarkable." Pl's Ex. A. The working diagnosis was kidney or bladder stone.2 Pl's Exhs. A & D. While awaiting additional medical testing, he violated his probation and was incarcerated in the Jefferson

2 In his deposition, Womble alleges that a urologist at Cooper Green Hospital told him he had a tumor in his bladder or kidney and that he should undergo a procedure (Pl's Dep., p. 32); however, no such diagnosis is included in the medical records.

County Jail for six to eight months. *Id*., p. 33. In May 2010, Womble transferred to Kilby Correctional Facility. In October 2010, he transferred to Staton Correctional Facility. *Id*., pp. 43-44.

This court previously summarized the medical records from Staton Correctional Facility in its February 17, 2015 Opinion.

> On October 28, 2010, Womble was transferred from Kilby Correctional Facility to Staton Correctional Facility. [Doc. 47-1, Def. Forniss' Ex. A, Attach to Dr. Hood's Affid.], p. 50. On March 23, 2011, Womble submitted a health services request form complaining of pain while urinating, lower abdomen pain, and urinating blood sometimes. *Id*., p. 46. On March 25, 2011, Womble reported to sick call complaining of difficulty urinating, burning upon urination, and lower abdomen pain. *Id*., p. 44. The nurse's notes indicate Womble reported that he "has had this problem for years [and] has had MRI, CT scan, IVP, [and] lab work in the free world before being locked up." *Id*., p. 45. The nurse referred Womble to a CMS provider and collected a urine sample for testing. *Id*. An ADOC urinalysis was negative for blood. *Id*., p. 67. On March 28, 2011, medical personnel sent out a urinalysis and urine culture to the lab. *Id*., p. 25. The laboratory reported "moderate" blood in the urine and "no growth."[3] *Id*., p. 62.
>
> On April 1, 2011, Womble returned for a follow-up appointment, complaining of pain and blood in urine over the past month. *Id*., p. 31. Medical personnel noted an in-house urinalysis was normal and diagnosed hematuria. *Id*. In addition, Womble signed a "release of information authorization" to Cooper Green Hospital, in which medical personnel ordered a "urology workup re[garding] hematuria [and a] MRI/CT of ABD/pelvis [and] ultrasounds." *Id*., p. 78. Medical personnel ordered a follow-up appointment to be conducted within two to three weeks. *Id*., p. 25. On April 4, 2011, a radiologist conducted an exam of Womble's abdomen and found the results to be "unremarkable." *Id.*, p. 73.
>
> On April 29, 2011, Womble reported to an ADOC mental health services psychiatrist that "he is still having health problems [and] was supposed to be seen by free world doctor." *Id*., p. 104.

3 On March 30, 2011, Womble submitted a medical grievance complaining of pain in his lower abdomen which was "getting unbearable." Def's Ex. 3, Attach to Womble's Affid. On April 1, 2011, medical personnel noted that Womble was "seen today." *Id*.

> In May 2011, Womble signed a form acknowledging that he refused treatment for "blood in urine" and that he "left before seeing provider" on April 26, 2011. *Id*., p. 17. On July 12, 2011, Womble submitted a health services request form, complaining of "urinating blood, can't use the restroom [and] [i]n a lot of pain in my lower abdomen or stomach." *Id*., p. 42. On July 14, 2011, Womble went to sick call complaining of difficulty urinating for the past four years, blood in urine, and a pain level of 8. *Id*., p. 36. The nurse provided ibuprofen and referred Womble to the Correctional Medical Services provider. *Id*. Medical personnel sent out urinalysis samples and ordered a follow-up appointment regarding hematuria lab results. *Id*., p. 24. The results of the urine tests were negative and indicated no growth. *Id*. p. 59-61.
>
> On August 12, 2011, Womble returned to sick call for a follow-up appointment regarding urinalysis results. *Id*., p. 30. Womble complained of "blood at end of urinary stream." *Id*. Medical personnel found "no distended bladder" and diagnosed "hematuria unknown etiology." *Id*.
>
> During a follow-up appointment on September 14, 2011, Dr. Hood "observed in-house voided specimen which was negative for blood with clean urine." *Id*., p. 29, 58. Dr. Hood diagnosed "hematuria stable [with] negative results today". *Id*. He also "instructed [Womble] to follow up with urologist once released; however, if symptoms worsen recheck HCU" and noted that Womble "voiced understanding." *Id*.
>
> On October 3, 2011, medical personnel noted that Womble submitted a grievance complaining of pain and blood in urine and that the nurse "will order Tylenol until [patient is] able to submit sick call." *Id*., p. 28. On November 9, 2011, medical personnel noted that Womble left before seeing provider for an annual testicular exam. *Id*.
>
> On November 15, 2011, Womble went to sick call complaining of a stomach virus. *Id*., p. 38-39. The nurse provided loperimide and Pepto-Bismol. *Id*., p. 39. The results of a urinalysis on December 22, 2011 were negative. *Id*., p. 72.

Doc. 54, Opinion and Order dated February 17, 2015, pp. 7-9.

The record also indicates that, on September 24, 2011, Womble submitted a medical grievance form in which he complained that he was still urinating blood and in

pain and requested pain medication "if [he] can't be treated for the problem." Def's Ex. 4, Attach. to Womble's Dep. On September 30, 2011, a Corizon Department Head advised Womble that he "need[ed] to put in a sick call request" and that she would refer his medical record to a provider. *Id*. On October 3, 2011, medical personnel noted on the grievance form that he was examined by the physician with negative findings, that he was "instructed to follow up in sick call if [he] experienced symptoms again," and that she would order Tylenol for his pain. *Id*. Womble, however, did not submit a sick call request seeking additional treatment or testing for his condition.

Womble was released from prison in January 2012. Four months later, on April 21, 2012, he sought treatment from Dr. Momoun Pacha, a urologist at Coosa Valley Urologists, PC, for his condition. Pl's Ex. C. The results of the biopsy indicated a bladder tumor with low grade II papillary transitional cell carcinoma. *Id*. Dr. Pacha noted, "It is unfortunate[] this problem has been going on for couple of years without any medical attention." *Id*. On April 27, 2012, Dr. Pacha noted that the cystoscopy to remove part of the tumor was performed with extreme difficulty due to its size. *Id*. On June 12, 2012, an additional cystoscopy was performed to remove the cancerous tumor from the right trigone area. *Id*.

## IV. DISCUSSION

### A. The Federal Claims

The challenge against Corizon to the constitutionality of treatment provided by medical professionals entitles Womble to no relief. Womble does not name any

individual health care professional as a defendant; instead, he seeks to hold Corizon liable for the conduct of its medical personnel.

> "[W]hen a private entity ... contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir.1997). "[L]iability under § 1983 may not be based on the doctrine of respondeat superior." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir.2003) (en banc).

*Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1310 (11th Cir.2011).

Because Corizon is a private medical contractor performing a traditional state function of providing health care to inmates, Corizon is the functional equivalent of a municipality. *See West v. Daniels*, No. 2:13cv912-WHA, 2015 WL 65212, *6 (Jan. 5, 2015). Consequently, the court evaluates Plaintiff's claim against Corizon as it would evaluate the claim against a municipality.

> [R]espondeat superior is not a valid theory of liability for private contractors employed by a state, *Street* [*v. Corr. Corp. of Am.*,] 102 F.3d [810,] 818 [ (6th Cir.1996) ]. Indeed, "every circuit to consider the issue" has extended "to private corporations as well" the rule that a defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis. *Id*. That [the defendant] is a professional limited liability company makes no difference with respect to respondeat superior liability under section 1983. *See, e.g., Craig v. Floyd Cnty., Ga*, 643 F.3d 1306, 1310 (11th Cir.2011) (finding that section 1983 claims against limited liability company cannot be based on respondeat superior.)

*West*, *supra* (citing *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir.2012)).

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003) (citations omitted).

> [S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous.

*Cottone*, 326 F.3d at 1360–61 (internal citations and quotations omitted).

Womble cannot state a § 1983 claim against Corizon based on the actions of its employees. Because Corizon cannot be held directly liable, Plaintiff must demonstrate that a history of widespread abuse put a responsible supervisor on notice of the need to correct the alleged deprivation and the supervisor failed to do so or that Corizon had a policy or custom that represents official policy that resulted in the delay or denial of adequate medical care to him. *See Cottone*, 326 F.3d at 1360–61; *Savoie*, 673 F.3d at 494. Womble does not allege a history of widespread abuse that would have put Corizon supervisors on notice of a need to correct constitutional deprivations. Instead, Womble argues that Corizon's policy of requiring a prisoner to fill out a medical slip to request an appointment with a physician when he is in severe pain and discomfort is evidence of an official policy that resulted in the delay or denial of medical care to him. The problem with Womble's argument is that requiring written medical request slips is an appropriate avenue for prisoners to request medical appointments. Nothing in the record indicates that Womble's condition prevented him from completing a written health request form.

In addition, the medical records indicate that medical personnel responded to Womble's written medical requests and grievances in a timely manner. Accordingly, the court concludes that Plaintiff has failed to state a claim against Corizon on the basis of supervisory liability.

Even assuming, *arguendo*, that Plaintiff could pursue his § 1983 claims against Corizon under the theory of *respondeat superior*, he fails to demonstrate a genuine dispute of material fact with respect to his claims that medical personnel acted with deliberate indifference to his health by delaying or denying treatment for his chronic hematuria.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the

prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and internal quotations omitted) (To show

deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

In addition to the above described requisite elements, when an inmate's deliberate indifference claim relates to a delay in treatment, this court must also consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007). In a case alleging that delay in medical treatment shows deliberate indifference,

the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187-1188 (11th Cir. 1994), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002).

Womble contends that Corizon should have ensured that he received additional medical treatment, such as a cystoscopy, and that the failure to transfer him to a medical specialist outside Staton Correctional Facility delayed his diagnosis of Grade II papillary transitional cell carninoma. The medical records demonstrate that Womble received treatment for his complaints of hematuria throughout his incarceration when he filed medical request slips and went to his appointments as scheduled. The fact that Womble desired a different mode of treatment during his imprisonment does not amount to deliberate indifference. This court therefore concludes that, even assuming *arguendo* Womble could proceed under the theory of respondeat superior against Corizon, there is no genuine dispute of material fact demonstrating that the defendant's actions amount to deliberate indifference to health and cruel and unusual punishment under the Eighth Amendment. This court therefore concludes that the Motion for Summary Judgment with respect to the federal claims is due to be granted in favor of Corizon.

**B. The State Law Claims**

The court's exercise of supplemental jurisdiction over the remaining state law claims is discretionary. Under 28 U.S.C. § 1367(c)(3), the court may "decline to exercise supplemental jurisdiction over a [state law] claim if the district court has dismissed all claims over which it has original jurisdiction . . . " The court's discretion is advised by

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), in which the Court held that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Id.* at 726. In *Carnegie-Mellon University v. Cohill*, the Supreme Court reiterated that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice . . . ." 484 U.S. 343, 350 (1988).

Under certain circumstances, the court may remand supplemental state law claims to state court. Although a remand of supplemental state law claims is not encompassed within the two express provisions for remand in the removal statutes, *see* 28 U.S.C. §§ 1441(c), 1447(c), the court has inherent authority to remand the state law claims. *Cf. Snapper v. Redan*, 171 F.3d 1249, 1263 n. 26 (11th Cir. 1999) (acknowledging the district court's "inherent power to remand a removed case when appropriate to enforce a forum selection clause"), *citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. at 354 (holding that Congressional "silence cannot sensibly be read to negate the power to remand"). The discretion to remand supplemental state law claims "'enables district courts to deal with cases involving [state law] claims in the manner that best serves the principles of economy, convenience, fairness and comity. . . .'" *Snapper, supra* (quoting *Carnegie-Mellon*, 484 U.S. at 357). "Any time a district court dismisses, rather than remands, a removed case involving [state law] claims, the parties will have to refile their papers in state court, at some expense of time and money." *Carnegie-Mellon*, 484 U.S. at

353. Furthermore, the pleadings demonstrate that the statute of limitations for filing the state law claims may have expired. Therefore, a remand of the state law issues to the Elmore County Circuit Court will enable Plaintiffs, seemingly without being subject to problems such as limitations, to pursue their state law claims in state court. *See Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992) (allowing remand of state law issues to state court in order to enable appellant to avoid the statute of limitations).

The court thus declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Upon consideration of the principles of judicial economy, convenience, fairness, and comity, the court concludes that the state law claims are due to be remanded to the Elmore County Circuit Court.

**V. CONCLUSION**

Accordingly, it is ORDERED as follows:

(1) The Motion for Summary Judgment with respect to the federal constitutional claims against Corizon be GRANTED.

(2) The federal claims be DISMISSED with prejudice.

(3) The state law claims be REMANDED to the Elmore County Circuit Court. The Clerk of the Court be and is hereby DIRECTED to take the action necessary to accomplish the remand of this case to the Circuit Court of Elmore County.

Done this 18th day of March, 2015.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE